[Crim. No. 2400.  In Bank.—July 6, 1922.]

THE PEOPLE, Respondent, v. LEW FAT, Appellant.

[1] CRIMINAL LAW—MURDER—ACCUSATORY STATEMENTS—SILENCE OF DEFENDANT—KNOWLEDGE OF LANGUAGE.—In the prosecution of a Chinese for the murder of a fellow-countryman, accusatory declarations in the English language made by the dying man in the presence of the arresting officers and of the defendant, who made no reply thereto, were properly admitted for the limited purpose of showing the acts and conduct of the defendant in the presence of the accusations, where it was shown by the officers that they had held conversations with the defendant in the English language.

[2] ID.—EVIDENCE—MEMBERSHIP IN CHINESE TONG—IMPROPER CROSS-EXAMINATION—EFFECT OF.—Where in such a prosecution, the defendant's counsel on the cross-examination of a police officer, who had given no testimony upon his direct examination respecting the defendant's membership in a certain Chinese tong, invited the witness to give a general dissertation on tongs and then elicited the statement that the witness understood the defendant had been a member, but that he had been informed that he had been thrown out since the shooting, it was not error to refuse to strike out such testimony as hearsay, where after the motion was denied,

the defendant's counsel persisted with his inquiries upon the express assumption of defendant's membership in such tong.

[3] ID.—LOCATION OF BULLET HOLE—REMARKS OF DISTRICT ATTORNEY. In such a prosecution, it was not error to refuse to direct the jury to disregard certain remarks made by the deputy district attorney with respect to the fact and location of a certain bullet hole in or near a door of the room in which the shooting occurred and in the drawing of certain inferences therefrom, where there was in evidence a diagram of the premises upon which a bullet hole at the indicated point was shown, and the record also disclosed that the jury had inspected the premises with particular regard to the location of the bullet holes.

[4] ID.—PROOF OF GUILT—PRESUMPTION OF INNOCENCE—INSTRUCTIONS. Where in such a prosecution the court gave instructions as to proof of guilt to a moral certainty and beyond a reasonable doubt and as to the presumption of innocence in the usual and approved forms, it was not error to refuse to give requested instructions repeating such rules in more diffuse and amplified forms.

[5] ID.—SUFFICIENCY OF EVIDENCE.—In this prosecution for murder, the evidence, while circumstantial, was overwhelming as to the defendant's guilt.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

George R. Perkins and R. Porter Ashe for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

THE COURT.—The appellant herein was convicted of murder in the first degree, his crime consisting in the alleged slaying of one Lum Bing, an elderly Chinese, in a building in Chinatown, in the city and county of San Francisco, on the afternoon of May 18, 1921. He appeals from the judgment following such conviction and urges several grounds of error upon his said appeal.

[1] His first ground of alleged error is that the trial court erred in the admission of evidence of certain accusatory declarations made by the dying decedent in the presence of the arresting officers and of the defendant, and of the acts and conduct of the latter at the time such

accusations were made. The first of these occurred within a few moments after the deceased had been shot and mortally wounded and after the defendant had been arrested within a short distance of the scene of the crime with a discharged and still smoking weapon in his hand. The arresting officer took the defendant into the presence of the wounded man and he testified that when the latter saw the defendant he pointed his finger at him and said in the English language, "That man shot me," to which accusation the defendant made no·reply. A short time thereafter when the mortally wounded man had been taken to the Harbor Emergency Hospital, the defendant and an alleged accomplice were again brought into his presence and when asked by one of the arresting officers who shot him, the dying man pointed at the defendant and said in English, "That was the man." To all of this evidence the defendant objected on the ground that it was not shown that the defendant understood the English language. He urges the same objection here, but the record before us does not sustain him in that regard. Prior to the introduction of the evidence thus objected to, a police officer had testified to having held conversations at various times with the defendant in English and to having received replies in that language. Another officer had also testified to numerous occasions in which he had spoken to the defendant in English and received replies from him in that language. There was also some testimony to the effect that during the trial of the cause the defendant and his attorney held conferences in the courtroom in the English language. This evidence brings the case fully within the rule laid down by this court in *People* v. *Ong Mon Foo*, 182 Cal. 697 [189 Pac. 690], wherein upon a much less satisfactory showing of a knowledge of the English language on the part of the defendant in that case this court held that the evidence of accusatory statements made by the deceased in the presence and hearing of the defendant were properly admitted in evidence for the limited purpose for which this class of evidence is admissible. It is to be noted that the trial court in its instructions to the jury herein carefully limited the purpose for which such evidence was admissible and was to be considered by the jury, viz., not as evidence of the truth of the facts stated in the accusation, but only for the purpose of showing the acts

and conduct of the defendant in the presence of the accusation. The action of the trial court was not erroneous in the admission of this evidence for the purpose to which it was thus confined.

[2] The next contention of the appellant is that the trial court committed prejudicial error in refusing to strike out as hearsay certain evidence given by a police officer as to defendant's membership in the Suey Sing Tong. The evidence and ruling of the court thus assailed arose during the cross-examination of a police officer by counsel for the defendant, who asked the witness this question: "Q. Do you know whether this defendant is a member of the Suey Sing Tong?" It is to be noted that the witness who was asked this question had given no testimony upon his examination in chief respecting the defendant's membership in the Suey Sing Tong, his only reference to this particular society consisting in the statement that he had once seen the defendant in a building belonging to this society and had held some conversation with him there. It is thus evident that the question was not cross-examination but was apparently an independent inquiry upon the part of the defendant's counsel for the purpose of learning what knowledge the witness had of the defendant's membership in this particular tong. The answer of the witness was: "I have always understood him to be a member of the Suey Sing Tong and in fact I was informed by . . . Tom Wah, member of the Suey Sing Tong and also one of its officers that following the shooting, this man [the defendant] was thrown out of the society." The defendant's counsel moved to strike out this answer as hearsay, which, after some discussion, the court denied. Preceding this question and answer, the defendant's counsel had invited the witness to give a general dissertation as to what Chinese tongs were and as to the nature and qualities of their membership and their purposes in general. After the foregoing question had been asked and answered and said motion made and denied, the defendant's counsel persisted in pursuing these inquiries upon the express assumption of the defendant's membership in this particular tong. Under the foregoing circumstances, the entire inquiry of the defendant's counsel being an excursion outside the limits of cross-examination, and being in part predicated at least upon the assumption of the de-

fendant's membership in this tong, we fail to see what basis of complaint he can have over this bit of hearsay evidence elicited on his own intiative and in the course of an inquiry which was not properly cross-examination and which, in the main, called for information on the part of the witness which was in the nature of things chiefly hearsay.

[3] The next contention of the appellant is that the trial court was in error in its refusal to direct the jury to disregard certain remarks made by the deputy district attorney with respect to the fact and location of a certain bullet hole in or near a door of the room in which the shooting of the deceased had taken place, and in the drawing of certain inferences by him from the fact and location of the said bullet hole at said point. The appellant claims that there was no showing of the existence of any such bullet hole, but, in the colloquy which occurred between defendant's counsel and the court at the time of making the objection, it appeared that there was in evidence, and then being exhibited to the jury, a diagram of the premises upon which a bullet hole at the indicated point was shown, and it was upon this showing that the trial court allowed the deputy district attorney to proceed with his argument. The record also discloses that the jury had been taken to the premises and had inspected the same with particular regard to the location of the bullet holes. This being so, it is apparent that the defendant could not have been injuriously affected by any remarks or inferences which the prosecuting officer might indulge in with respect to a nonexistent bullet hole, if such were the fact. We see no error in the action of the trial court in refusing to give the requested direction to the jury.

[4] The appellant's next contention is that the trial court erred in its refusal to give certain instructions requested by the defendant. The first group of these instructions which the appellant insists should have been given undertake to set forth in various forms the familiar rule that the guilt of the defendant must be proved to a moral certainty and beyond a reasonable doubt. The reason assigned by the judge of the trial court for his refusal to give these instructions were that they had been given in substance elsewhere in the general body of his instructions. The record fully bears out this assertion as to each one of

these instructions, showing them to have been framed and given in the usual and ordinary and approved forms of expression of the rule. The defendant was entitled to no more than this. The next group of his requested instructions which the defendant claims should have been given refer to the presumption of innocence to the benefit of which the defendant was entitled throughout his trial and up to the moment of the determination by the jury of his guilt or innocence. But an examination of the instructions which the court gave discloses that it covered the entire matter of these instructions with a clear, concise and correct charge. It was not required to repeat the rule in the more diffuse and amplified form of the defendant's requested instructions.

[5] Finally, the appellant contends that the evidence is insufficient to sustain the verdict, but as to this point the appellant concedes that the evidence is substantially conflicting as to the main circumstances of the case upon which the appellant's conviction rests. In view of the fact, however, that this is a capital case we have carefully scrutinized the record and are entirely satisfied that the evidence sustains the verdict. Without attempting to review all of the facts elicited at the trial, a single set of circumstances may be adverted to as indicating the seriousness of the case against the defendant. The deceased, an aged and inoffensive Chinese, living with his wife in a building in San Francisco's Chinatown, and seldom leaving his own room except to go to another room in the same building to play with two little children who lived there, was going from or returning to his own room on the afternoon on the day of his murder, when he was shot six times through the body. At the report of these shots two police officers, who happened to be passing the building, rushed in and dashed up the stairs, at the top of which they met two Chinese, each with a revolver in his hand. One of these pointed his weapon at the approaching officers, who promptly knocked him down and arrested him. The other defendant, the defendant herein, threw away his still smoking revolver just before his arrest, which, being recovered, was found to be still hot and smoking, with all of its cartridges exploded, and which weapon was also found to be of the same caliber as that with which the deceased

had been mortally wounded. When taken immediately into the presence of the victim he was identified by him as the man who had shot him, to which accusation he made no reply. There were many other circumstances tending to show the defendant's motive for the commission of the crime, while his explanations of his presence with a smoking revolver so near the place and moment of the homicide were neither probable nor convincing. The evidence, while circumstantial, was overwhelming as to the defendant's guilt of the crime.

The judgment is affirmed.

Shaw, C. J., Lawlor, J., Wilbur, J., Lennon, J., Sloane, J., Richards, J., *pro tem.,* and Waste, J., concurred.