[Crim. No. 4922.   In Bank.   Jan. 25, 1949.]

THE PEOPLE, Respondent, v. HARLAN C. BEMIS et al., Defendants; DONALD E. HUDSON, Appellant.

Robert H. Green for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendants Donald Hudson and Harlan Bemis were jointly charged with two counts of burglary. Bemis pleaded guilty to one of the counts, and Hudson was tried by a jury and convicted on one count of burglary of the second degree. The second count was dismissed at the close of the trial for lack of evidence. Defendant appeals from the judgment and order denying his motion for a new trial.

Sometime during the evening of June 12, 1947, or the early morning of June 13th, a coffee shop at 754 South Union Street in Los Angeles was burglarized. Mrs. Eleanor Beck, the proprietress, testified that when she arrived in the morning to open her shop she found the front door open about an inch. The lock had been knocked off, and approximately $125, some whiskey, keys, and a pair of shears were missing from the shop. To connect defendant Hudson with this burglary the prosecution relied entirely on the oral admissions of defendant made to Officers Eggenweiler and Hooper while defendant was under arrest.

Officer Eggenweiler testified as follows: ''We had this blue canvas bag here and the contents in the room where we were talking to the defendant, and I had asked him the question, 'Had you ever been in the Portsmouth Hotel on South Hill Street across from Pershing Square?' And he stated, 'Yes.' I asked him when and he said, 'Just a short time ago.' I asked him if he had seen Bemis there, who was a co-defendant before, and he stated, 'Yes.' I then took a large screw driver, with a light colored handle on it, out of the bag and asked him if he had ever seen that before, and he stated yes, that he had given that to Bemis in the State of Arizona some time ago. . . . We then had a moneybag there, and I told him I had talked to Bemis, who stated that he had gone out onto West Ninth Street and had gone out on South Union, and while on Union

Avenue that he had stood out on the sidewalk in front of 754 South Union—he didn't know the address, but he just knew the place—and that Hudson had used the large screw driver and had forced the door open by prying on the hasp of the door. I said Bemis had admitted doing these jobs, this one, and the one on Ninth Street, that he had connected Hudson with it, and he stated——'' Question. "Now, you are talking about Hudson?'' Answer. "I am talking about Hudson now. I asked him what he had to say about that, or some question like that, and he said that he was with Bemis, but that he didn't have any part in the burglary which was committed on Ninth Street. . . . He said he went to this place on South Union, that Bemis did stand out in front and he went in it.

"Officer Hooper and myself then drove out to South Union, stopped in front of the cafe, asked him to point it out, and he said that was the cafe he went into. He said he used this large screw driver to force the door open and went in; that he stole some whiskey and stole—or took the money and also that there was some keys. He stated that he later threw the bunch of keys away." Officer Eggenweiler further testified that Hudson had identified a moneybag as the one he took from the cafe and the bag of tools as a kit he and Bemis had used on different jobs in Arizona and Texas. Officer Hooper's testimony in reference to the conversation with defendant was substantially the same as Officer Eggenweiler's. The bag of tools was found in Bemis' hotel room. Both officers testified that Hudson spoke voluntarily in answer to their questions; that they used no force and made no threats or promises.

Defendant Hudson testified in his own behalf. He denied having taken part in either burglary or having gone with Bemis to either of the shops that were burglarized. He stated that he would have made no statement to the officers if they had not first threatened and then beaten him. He testified that after he was beaten he said: "Well, I guess I am guilty if you people won't believe me when I tell you where I was and you won't give me a chance to prove my story, I guess I am guilty." He denied having identified Mrs. Beck's shop. Although he admitted that he knew Bemis and had been with him in Texas and had met him in Los Angeles and knew where he lived, he denied ever having been to Bemis' hotel room or having kept any of his belongings there. He denied having told the officers that he and Bemis had the bag together in Texas and Arizona. He stated that he told the officers that

Bemis had brought the bag up to Los Angeles but that he, Hudson, had never seen the tools in the bag before the officers showed them to him.

Appellant contends that the trial court committed prejudicial error by failing to give of its own motion instructions that the testimony of an accomplice ought to be viewed with distrust and that evidence of the oral admissions of a party should be viewed with caution. He contends that although Bemis did not take the stand, his hearsay statements testified to by the two officers should be considered as testimony of an accomplice and that hence an accomplice instruction should have been given. Any statements Bemis made to the officers were admissible, however, only to the extent that Hudson admitted their truth. (*People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18]; *People* v. *Lapara*, 181 Cal. 66, 71 [183 P. 545]; *People* v. *Teshara*, 134 Cal. 542, 544 [66 P. 798]; 4 Wigmore on Evidence, § 1072.) They were not independent evidence that Hudson committed a burglary. (*People* v. *Simmons, supra*, 28 Cal.2d 699, 717; *People* v. *Yeager*, 194 Cal. 452, 486 [229 P. 40]; *People* v. *Lew Fat*, 189 Cal. 242, 244 [207 P. 881]; *People* v. *Ong Mon Foo*, 182 Cal. 697, 703 [189 P. 690]; *People* v. *Lapara, supra*, 181 Cal. 66, 71.) The jury thus should have considered Bemis' statements only as admissions of Hudson if they found he had admitted their truth. Since they were admitted as adoptive admissions of Hudson rather than as testimony of Bemis, it was not error to fail to give an instruction that the testimony of an accomplice should be viewed with distrust.

The trial court did err, however, by failing to instruct the jury that evidence of the oral admissions of defendant ought to be viewed with caution. The dangers inherent in the use of such evidence are well recognized by courts and text writers. (*People* v. *Thomas*, 25 Cal.2d 880, 890 [156 P.2d 7]; *People* v. *Koenig*, 29 Cal.2d 87, 94 [173 P.2d 1]; *People* v. *Cornett, ante*, p. 33 [198 P.2d 877]; *People* v. *Wardrip*, 141 Cal. 229, 232 [74 P. 744]; *Kauffman* v. *Maier*, 94 Cal. 269, 283 [29 P. 481, 18 L.R.A. 124]; *Conger* v. *White*, 69 Cal.App.2d 28, 38 [158 P.2d 415]; *Damas* v. *People*, 62 Colo. 418, 421 [163 P. 289, L.R.A. 1917D 591]; *Thomas* v. *State*, 186 Md. 446, 452 [47 A.2d 43, 167 A.L.R. 390]; *Sylvain* v. *Page*, 84 Mont. 424, 438 [276 P. 16, 63 A.L.R. 528]; *Kutchera* v. *Graft*, 191 Iowa 1200, 1206 [184 N.W. 297, 26 A.L.R. 1257]; *Commonwealth* v. *Giovanetti*, 341 Pa. 345, 362 [19 A.2d 119]; *Collins* v. *Commonwealth*, 123 Va. 815, 821 [96 S.E.

826] ; 3 Wigmore on Evidence, § 866 ; 7 Wigmore on Evidence, §§ 2070, 2071, 2094; 2 Wharton, Criminal Evidence, § 643.) ''It is a familiar rule that verbal admissions should be received with *caution* and subjected to careful scrutiny, as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission, and are liable, by the omission or the changing of words, to convey a false impression of the language used. No other class of testimony affords such temptations or opportunities for unscrupulous witnesses to torture the facts or commit open perjury, as it is often impossible to contradict their testimony at all, or at least by any other witness than the party himself.'' (2 Jones, Commentaries on the Law of Evidence, 620.) It was undoubtedly such considerations that led the Legislature to make the admitting of extrajudicial admissions into evidence conditional on the giving of a cautionary instruction. (See *People* v. *Dail,* 22 Cal.2d 642, 655 [140 P.2d 828].) Section 2061 of the Code of Civil Procedure provides that the jury are ''to be instructed by the court on all proper occasions: 4. That the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution,'' and it is now settled that it is error for the trial court not to give such instructions in proper cases. (*People* v. *Koenig, supra,* 29 Cal. 2d 87, 94; *People* v. *Cornett, supra, ante,* p. 33 [198 P.2d 877] ; *People* v. *Hamilton, ante,* p. 45 [198 P.2d 873] ; see *People* v. *Dail, supra,* 22 Cal.2d 642, 656; *People* v. *Macias,* 77 Cal.App.2d 71, 80 [174 P.2d 895].) It is immaterial whether the admissions amount to confessions. (See *People* v. *Koenig, supra,* 29 Cal.2d 87, 91; *Damas* v. *People, supra,* 62 Colo. 418, 421; *Thomas* v. *State, supra,* 186 Md. 446, 452; *Commonwealth* v. *Giovanetti, supra,* 341 Pa. 345, 362; 3 Wigmore on Evidence, § 866; 2 Wharton, Criminal Evidence, § 643.)

It is contended that the failure to give the instruction was not prejudicial, on the grounds that the instruction states a mere commonplace, which the jury would know without any instruction on the subject, that the admissions amounted to a confession and the jury were properly instructed that they must disregard the alleged confession if they found it was not made voluntarily, and that the defendant admitted at the trial that he had made some of the incriminating statements related by the officers.

In *Hirshfeld* v. *Dana,* 193 Cal. 142, 160 [223 P. 451], the court, after collecting and discussing the cases, said: "It is clear from the later decisions that subdivision 4 [of Code Civ. Proc., § 2061] is unconstitutional, but that where an instruction is proposed in the language of that subdivision, the giving or the refusal to give it will not be held to be prejudicial error; and this upon the reasoning that it states a mere commonplace matter within the general knowledge of the jury." This reasoning was rejected, however, in *People* v. *Dail, supra,* 22 Cal.2d 642, where the court, after overruling the Hirshfeld case and holding subdivision 4 constitutional, said: "The result of our present decision is that such instructions are necessary in a proper case and the failure so to instruct may be reversible error." (*People* v. *Dail, supra,* 22 Cal.2d 642, 656.) To hold that the instructions required by subdivision 4 state mere commonplaces within the general knowledge of the jury is tantamount to holding that the failure to give them in proper cases is not error. Such a holding would be contrary to the clear mandate of the statute and the many recent cases interpreting it. (*People* v. *Cornett, supra, ante,* pp. 33, 40; *People* v. *Hamilton, supra, ante,* pp. 45, 51; *People* v. *Koenig, supra,* 29 Cal.2d 87, 94; *People* v. *Dail, supra,* 22 Cal.2d 642, 656; *People* v. *Macias, supra,* 77 Cal.App.2d 71, 80; *Freeman* v. *Nickerson,* 77 Cal.App.2d 40, 63 [174 P.2d 688]; *Conger* v. *White, supra,* 69 Cal.App.2d 28, 38.) The Legislature has made it clear that it cannot be assumed that the jury will have in mind the considerations that may affect the weight or credibility of the testimony of an accomplice or the evidence of the oral admissions of a party.

The cautionary instruction that evidence of oral admissions is to be viewed with caution is designed to aid the jury in determining whether an admission or confession was in fact made. (See 3 Wigmore on Evidence, § 866.) This issue is distinct from the issue whether a confession, assuming it was made, was voluntary. The jury had to decide not only whether defendant made a confession, but also if he did, whether he made it voluntarily. The instruction to disregard an involuntary confession told the jury only that they must decide the latter issue if they found against defendant on the former, but did not suggest to them that they must view with caution the evidence introduced to prove that defendant spoke the words.

Defendant testified at the trial that he had talked to the officers, but his version of the conversation agreed with

theirs only in that he admitted that he had told them that he knew Bemis. The jury were faced with the difficult task of deciding which version was correct. The burden was on the prosecution to prove defendant guilty beyond a reasonable doubt. In determining whether the prosecution met that burden, the jury should have had before them the cautionary instruction required by the statute. This instruction related specifically to the manner in which the jury were to view the only evidence that connected defendant with the crime, and since we cannot say that a different verdict would have been improbable had the cautionary instruction been given, the failure to give the instruction resulted in a miscarriage of justice.

The judgment and the order denying the motion for a new trial are reversed.

Gibson, C. J., Edmonds, J., Carter, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.

The sole ground upon which the majority opinion bases the reversal is the failure of the trial court to instruct the jury, upon its own motion, that evidence of the oral admissions of the defendant ought to be viewed with caution.

While it has been held in recent cases that such instruction should be given on proper occasions, this appears to be the first case in which a judgment has been reversed solely because of the trial court's failure so to instruct. In my opinion, when the sole error consists of the failure to give such instruction, such error alone would seldom, if ever, warrant a reversal for, as has been repeatedly said, the instruction states a mere commonplace or matter of common knowledge which the jury would know without any instruction on the subject. (*People* v. *Wardrip,* 141 Cal. 229, 233 [74 P. 744]; *Goss* v. *Steiger Terra Cotta & Pottery Works,* 148 Cal. 155, 156 [83 P. 681]; *People* v. *Raber,* 168 Cal. 316, 320 [143 P. 317]; *People* v. *Koenig,* 29 Cal.2d 87, 94 [173 P.2d 1]; *People* v. *Hewitt,* 78 Cal.App. 426, 440 [248 P. 1021]; *People* v. *Hansen,* 130 Cal.App. 217, 220 [19 P.2d 993]; *People* v. *Burnette,* 39 Cal. App.2d 215, 231 [102 P.2d 799]; *Freeman* v. *Nickerson,* 77 Cal.App.2d 40, 62 [174 P.2d 688].)

In the present case the "admissions" of defendant constituted a detailed confession of his active participation in the crime for which he was convicted. Defendant took the witness

stand and denied some, but not all, of the numerous incriminating statements which the officers testified that he had made. His principal claim was that his confession was not voluntarily made, but the jury, under proper instructions relating to confessions, found against defendant upon this claim. I am satisfied, under the circumstances presented by the record before us, that it is highly improbable that the jury would have reached any different conclusion concerning the defendant's guilt in the event that the omitted instruction had been given; and I therefore believe that the constitutional mandate requires an affirmance. (Const., art. VI, § 4½.) It seems appropriate here to recall that long before the enactment of the constitutional mandate, this court said in *People* v. *Cronin,* 34 Cal. 191, at page 204: "If we were to reverse judgments because we find ourselves able, upon full examination and mature reflection, to improve upon what the Court below has said—which, under like circumstances, doubtless, the Court below could itself do—there would be no end to new trials."

I find no error in the record which would warrant a reversal, and I would therefore affirm the judgment and the order denying the motion for a new trial.

Shenk, J., concurred.