[Crim. No. 1656. Fourth Dist. Mar. 2, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNIE BURNS, Defendant and Appellant.

Robert A. Bowler, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Charles A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), J.—The defendant Johnnie Burns was convicted by a jury of robbery and burglary. He admitted three prior felony convictions.

Accepting as true the evidence supporting the judgment, between 9 and 9:15 p.m. on March 2, 1963, Clarence Hartenstein (age 15) and his mother Helen Hartenstein were sitting in the kitchen of their home when there was a noise at the front door. When Clarence opened the door a man wearing a striped hat and white handkerchief completely covering his face grabbed him and demanded money or his life. As they struggled, Clarence caught a glimpse of his face and recognized the man as defendant. At one time the assailant seemed to be reaching in his pocket for a knife. In the meantime Mrs. Hartenstein ran from the house for help. Within a few moments Clarence broke loose and joined his mother in front of the house. A neighbor had called the police and several people were gathered on the street. Clarence and Frank Mesa (age 13) went to the alley behind the house where they saw a man leaving, identified by Clarence as his assailant. Frank observed the man pulling on something white in color covering his face; Frank did not see any object in his hands. When they returned to the front the police had arrived. A search of the house revealed that Mrs. Hartenstein's small dark purse containing $3.00 was missing from the drawer of a table in the living room. An officer took Clarence and Frank in a patrol car in search of the suspect. Within a few moments Clarence saw defendant walking up a ramp to a nearby surplus store and identified him as the assailant. He appeared to be carrying a small dark object which Frank saw him throw in the bushes. When he was arrested at the door he was empty-handed and was not wearing a hat. He had an open blade knife and two white handkerchiefs in his pocket. Clarence recognized him as the same person who came with another to his home a few hours before the attack to obtain a fan belt. That evening an officer found Mrs. Hartenstein's purse in the bushes in the area where defendant was observed by Frank to throw something. A striped hat was found next day in the same area. Mrs. Hartenstein's money was never located.

The identity of defendant was not without doubt. Clarence said, "I couldn't see his face good in the dark." It was dark in the living room where the struggle took place. Although Mrs. Hartenstein identified defendant as the assailant, cross-examination showed that at most she saw only a masked person

for a moment in the dark when she fled for help. She had stayed in the kitchen, separated, except for a door, by a wall from the living room where Clarence and his assailant struggled. On direct examination Clarence identified the blade of the knife taken from defendant but said during the struggle the assailant "looked like he had a knife—put his hand in his pocket," a conclusion and statement which leaves something to be desired if actual proof of displaying a knife is sought. Clarence told the police when they arrived both that he knew and he didn't know who the assailant was. In the alley the person seen by Frank Mesa was too far away for Frank to observe if he was wearing a coat and his back was turned to Frank.

 The defendant's chief defense was an alibi. He contended he was at a party nearby until 9:30 p.m. Impeaching evidence was introduced that defendant had made an oral statement to the police the day following his arrest in which he said he left the party between 8:30 and 9 p.m. This was an incriminating statement or admission. (*People* v. *Underwood*, 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937].) The record is silent whether defendant was advised of his rights to counsel and to remain silent. The burden is on the People to lay a proper foundation with respect to these matters in order that the incriminating statements or admissions may be introduced. Under the recently decided case of *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], not known at the time this case was tried, the court erred in permitting the introduction of the statement and compounded the error by failing to give the instruction that an oral admission should be viewed with caution. (*People* v. *Bemis*, 33 Cal.2d 395, 398 [202 P.2d 82]; *People* v. *Carswell*, 51 Cal.2d 602, 608 [335 P.2d 99].) The Attorney General argues that the statement was only a prior inconsistent statement offered solely to impeach the defendant. But the court did not so consider it, and instructed the jury that "such evidence may be considered . . . in determining his [defendant's] guilt or innocence."

 The defendant takes the position that the coupling of the errors with a close factual case turned the jury's verdict against him. We have studied the entire cause, including the evidence, and cannot conclude that the error of admitting into evidence defendant's impeaching admission and the error of the court in failing to instruct on viewing admissions with caution, were not prejudicial; on the contrary it is reasonably

probable that a result more favorable to the defendant would have been reached in the absence of such errors. (Cal. Const. art. VI, § 4½; *People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].)

Judgment reversed.

Coughlin, Acting P. J., and Finley, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 28, 1965.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.