Filed 12/5/13  P. v. Roque CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>LEONARD HILARIO ROQUE,<br><br>　　　Defendant and Appellant. | F064229<br><br>(Super. Ct. No. F11901249)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Hilary A. Chittick, Judge.

Marilyn G. Burkhardt, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Leonard Roque was convicted by jury of second degree murder (Pen. Code, § 187, subd. (a))[1] and sentenced to 16 years to life in prison.  His appeal is based

---

[1] Subsequent statutory references are to the Penal Code.

on the trial court's failure to instruct the jury with a portion of CALCRIM No. 358 that warns evidence of a defendant's unrecorded extrajudicial statements should be viewed with caution. We find that the trial court's omission of this instruction was harmless error and affirm the judgment accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

Joseph Farkas was stabbed repeatedly by Roque during a fight that occurred in the early morning hours of March 5, 2011 on Blackstone Avenue in Fresno. Several people witnessed the altercation and saw Roque flee the scene as Mr. Farkas bled to death in the street. Roque was apprehended by police the next day.

On September 9, 2011 the Fresno County District Attorney filed a criminal information charging Roque with murder. The information included an enhancement allegation pursuant to section 12022, subdivision (b)(1), for personal use of a deadly weapon. It was further alleged that Roque had inflicted great bodily injury for purposes of section 1203.075 (ineligibility for probation). The charges were tried before a jury in November 2011.

Prosecution Evidence

Maxine Barfield had a brief encounter with Mr. Farkas before he died. He approached her as she was walking to a gas station and asked if she had seen two prostitutes. Ms. Barfield said that she had not seen the women he was looking for and continued on her way. Mr. Farkas walked in the opposite direction towards the Manchester Motel on Blackstone Avenue.

After making a purchase inside of the gas station, Ms. Barfield exited the premises and observed Mr. Farkas moving hurriedly away from the adjacent parking lot of the motel. Roque emerged from the same parking area approximately two minutes later. Ms. Barfield testified that Roque was walking fast and eventually started running. As he passed by her, she heard Roque say, "I'm about to get that motherfucker."

2.

Ms. Barfield briefly lost sight of both men and subsequently witnessed them fighting in the middle of the street. It appeared to her that Mr. Farkas was trying to defend himself by holding his hands up in front of his chest as Roque swung at him. She watched Roque land several blows but never saw Mr. Farkas strike back. Mr. Farkas eventually fell to the ground, at which point Roque knelt down on his chest and continued to swing at him until the victim stopped moving. Roque stood up and ran away as a car drove up to the scene.

Mario Gonzalez witnessed the incident while driving on Blackstone Avenue. He saw Roque approach Mr. Farkas on the sidewalk and hit him from behind. Mr. Farkas tried to push Roque away and held his hands up in front of his chest as Roque continued punching him. The men eventually moved into the middle lane of traffic and in front of Mr. Gonzalez's vehicle.

Mr. Gonzalez described the fight as one-sided. Roque overpowered his opponent, who "was never really trying to fight back." Although Mr. Farkas appeared motionless after falling to the ground, Roque got on top of him and struck him approximately ten more times. When Mr. Gonzalez saw this happening, he got out of his car, yelled at Roque, and tried to intervene. Roque took off running. Mr. Gonalez looked down at the victim and saw that he appeared to be choking on his own blood.

Alejandra Lopez was a passenger in the vehicle driven by Mario Gonzalez. Ms. Lopez witnessed part of the incident in between sending text messages on her phone. She remembered seeing two individuals trading punches with each other and one of the men running away afterward.

A fourth witness named Sigrid Manjarrez had been driving behind Mario Gonzalez. She testified that from her vantage point she could see Roque running towards Mr. Farkas before the physical confrontation began. She further recalled seeing Roque hit the victim several times and Mr. Farkas returning only a single punch. Ms. Manjarrez turned away momentarily after Mr. Farkas fell down. When she looked back, the victim

3.

had stopped moving and she saw "a whole bunch of blood." She later told police that Roque had continued to hit Mr. Farkas while he was lying motionless on the ground.

Dr. Venu Gopal, chief forensic pathologist for the Fresno County Coroner's Office, performed an autopsy on the victim. He determined the cause of death to be perforation of the left internal jugular vein and left common carotid artery due to multiple stab wounds. Dr. Gopal testified that Mr. Farkas suffered five different stab wounds on his neck, chest, and left hand, the latter of which was characterized as a defensive wound.

The general manager of the Manchester Motel, Shantilal Desai, also testified at trial. Roque had paid for lodging on the night in question but promptly asked for a refund after seeing the condition of his room. After processing the refund, Mr. Desai observed Roque arguing loudly with Mr. Farkas near the motel entrance. Mr. Farkas was holding a flashlight and pointing it at Roque as the men exchanged words.[2] They vacated the premises after Mr. Desai threatened to call the police if they did not leave.

Detective Jennifer Federico of the Fresno Police Department conducted a recorded interview with Shantilal Desai on the morning of the incident. Detective Federico testified that Mr. Desai originally told her the loud argument occurred before he issued a refund to Roque. Mr. Farkas reportedly walked away after being asked to leave by Mr. Desai, but Roque stayed behind to obtain his refund. Once the refund was processed, Roque departed in the same direction as Mr. Farkas had gone.

Defense Evidence

Roque testified in his own defense, providing an account of the events leading up to Mr. Farkas' death. He spent the evening of March 4, 2011 consuming alcoholic beverages with friends at various locations. By 1:00 a.m. the next morning, Roque was

---

[2] Police found a flashlight near the victim's body at the crime scene. None of the eyewitnesses recalled seeing anything in Mr. Farkas' hands during the fight.

walking along Blackstone Avenue in search of a motel with vacancy. He eventually arrived at the Manchester Motel as Mr. Farkas was leaving the same establishment.

When they passed by each other, Mr. Farkas said, "Man, what the fuck you looking at, bitch?" Roque replied that he could look wherever he wished, but walked away after saying, "I ain't got time for this shit." Mr. Farkas followed Roque back to the motel and stood near the entrance watching him as Roque paid for a room.

Roque went to his room, found it to be unacceptable, and returned to the front of the building to ask for a refund. Mr. Farkas was still standing near the motel entrance. He began taunting Roque by pointing a flashlight at him and saying things like, "I'm going to fuck you up." Mr. Farkas appeared to be intoxicated, as later confirmed by toxicology screening which showed his blood alcohol level to be 0.11 percent. Roque responded to Mr. Farkas' threats by saying, "Man, why don't you just go [away]. Ain't nobody trying to get into it with you. I don't know what your problem is."

The motel manager came out and told the men to be quiet. Mr. Farkas walked away and out of sight while Roque spent the next "five to seven minutes" waiting for the room charge to be refunded to his credit card. After obtaining his refund, Roque headed northbound on Blackstone Avenue to find another motel.

Roque was walking and checking his cell phone when Mr. Farkas suddenly appeared and said, "What's up now, bitch?" He proceeded to hit Roque on the top of his head and across the bridge of his nose. Roque's eyes watered up, mixing with blood from his "busted nose."

Roque panicked as he tried to block additional punches. The initial blows had impaired his vision and left him dazed to the point where he feared he might lose consciousness. In an effort to stop the attack, Roque pulled a knife from his pocket and swung the blade across the front of his body. His assailant was undeterred by the weapon; he held on to Roque's shirt with one hand and continuing punching him with the other. Roque swung his knife upwards several times until he felt an impact. He

5.

explained: "As I was swinging, I knew I hit something because I felt blood squirt me…That's when I knew I actually hit something."

Mr. Farkas fell to the ground and pulled Roque down with him. Roque acknowledged that he dropped to one knee, as described by other witnesses, but denied striking the victim after he had fallen. As Roque paused to catch his breath, he heard a car door open and saw someone walking towards him. He claimed to be frightened by the sudden appearance of this individual: "When the car door opened in the manner that it did, I thought maybe this guy was coming after me, and I panicked and took off running…I was scared. They came out real fast on me and I just ran."

Roque testified that he stabbed the victim in self-defense and out of fear for his own life. Photographic evidence and other witness testimony corroborated Roque's claim that he sustained injuries during the fight. The injuries included facial bruising, an allegedly broken nose, and a wound on the side of his head.

Verdict and Sentencing

The jury found Roque guilty of second degree murder and returned true findings on the enhancement allegations. He was sentenced to a total prison term of 16 years to life, consisting of 15 years to life for the murder conviction, plus an additional year for the personal use of a deadly weapon enhancement. This timely appeal followed.

**DISCUSSION**

At the request of defense counsel, and in light of Maxine Barfield's testimony that she heard Roque say "I'm about to get that motherfucker," the jury was instructed pursuant to CALCRIM No. 358. The instruction given was as follows: "You have heard evidence that the defendant made an oral or written statement before the trial. You must decide whether the defendant made any such statement, in whole or in part. If you decide that the defendant made such a statement, consider the statement, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement."

6.

The trial court omitted the final bracketed sentence of CALCRIM No. 358 which admonishes jurors to "[c]onsider with caution any statement made by [the] defendant tending to show [his] guilt unless the statement was written or otherwise recorded." Roque contends the failure to include this language was reversible error. Respondent concedes the error, but argues it was harmless.

"When the evidence warrants, the court must instruct the jury sua sponte to view evidence of a defendant's oral admissions or confession with caution." (*People v. Dickey* (2005) 35 Cal.4th 884, 905 (*Dickey*).) The same is true of a defendant's "pre-offense statements of later intent" and other incriminating remarks made before, during, or after the crime. (*People v. Carpenter* (1997) 15 Cal.4th 312, 393-394 (*Carpenter*).) We thus accept the Attorney General's concession, but also agree that the instructional error was harmless. The standard of review for erroneous failure to give the cautionary instruction contained in CALCRIM No. 358 is "the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given." (*Dickey*, *supra*, 15 Cal.4th at p. 905.)

The California Supreme Court has explained that the purpose of the cautionary instruction is to assist the jury in determining whether the defendant made the out-of-court statement in question. (*Dickey*, *supra*, 15 Cal.4th at p. 905; *People v. Beagle* (1972) 6 Cal.3d 441, 456.) The instruction serves to warn jurors that testimonial discrepancies regarding what the defendant actually said may indicate the defendant's words did not constitute an incriminating statement or admission. (See *Dickey*, *supra*, at pp. 905-906; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1224 (*Bunyard*).)

"Since the cautionary instruction is intended to help the jury to determine whether the statement attributed to the defendant was in fact made, courts examining the prejudice in failing to give the instruction examine the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the admissions were repeated accurately." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1268.) Where there

7.

is no such conflicting evidence and the defendant simply denies making the statement, failure to give the cautionary instruction has been held to be harmless error. (*Dickey*, *supra*, 15 Cal.4th at pp. 905-906; *Bunyard*, *supra*, 45 Cal.3d at pp. 1225-1226.) This is especially true in cases where the trial court has otherwise thoroughly instructed the jury on assessing the credibility of witnesses. (See, e.g., *People v. McKinnon* (2011) 52 Cal.4th 610, 680 (*McKinnon*); *People v. Wilson* (2008) 43 Cal.4th 1, 20 (*Wilson*).)

Roque claims the instructional error in this case cannot be deemed harmless under the foregoing authorities because his trial counsel "vigorously challenged the reliability and meaning of appellant's alleged admission" during closing argument. He is wrong. "It is axiomatic that argument is not evidence." (*People v. Breaux* (1991) 1 Cal.4th 281, 313.)

The accuracy of Maxine Barfield's testimony concerning what she heard Roque say prior to the altercation with his victim was not contradicted by other evidence. There was no conflicting testimony regarding the words that were used, the context in which they were uttered, or their meaning. (*McKinnon*, *supra*, 52 Cal.4th at p. 680.) At best, Roque's own trial testimony amounted to an implicit denial that he made any statements in the presence of Ms. Barfield, which merely raised an issue of witness credibility. (*Ibid.*; *Wilson*, *supra*, 43 Cal.4th at pp. 19-20.)

While it did not recite the full version of CALCRIM No. 358, the trial court thoroughly instructed the jury on how to assess the credibility of a witness. The jury was instructed with CALCRIM Nos. 226 (Witnesses), 301 (Single Witness Testimony), 302 (Evaluating Conflicting Evidence), 315 (Eyewitness Identification), 316 (Additional Instructions on Witness Credibility), and 318 (Prior Statements as Evidence). These instructions, coupled with the standard instructions on reasonable doubt, presumption of innocence, the prosecution's burden of proof, and reliance on circumstantial evidence, adequately addressed witness credibility issues and provided the necessary guidance for evaluating Maxine Barfield's testimony about Roque's alleged out-of-court statement.

(*Dickey*, *supra*, 35 Cal.4th at p. 906; *Carpenter*, *supra*, 15 Cal.4th at p. 393; see also, *People v. Moore* (2011) 51 Cal.4th 1104, 1140 [claims of instructional error evaluated in light of instructions as a whole].)

The jury was also instructed with CALCRIM No. 359 on the corpus delicti rule,[3] which Roque now claims exacerbated the prejudicial impact of the trial court's error. His argument is unavailing, particularly because Roque's trial counsel requested the instruction and made no subsequent objections to its use. (*People v. Enraca* (2012) 53 Cal.4th 735, 761 [The doctrine of invited error bars a defendant from challenging an instruction when the defendant has made a conscious and deliberate tactical choice to request it.].) In any event, trial courts have a sua sponte duty instruct on the corpus delicti rule under CALCRIM No. 359 if a defendant's out-of-court statements form part of the prosecution's evidence. (*People v. Howk* (1961) 56 Cal.2d 687, 706-707.) The use notes for CALCRIM No. 359 likewise state that the instruction must always be given along with CALCRIM No. 358. Since Roque makes no showing that the jurors misinterpreted CALCRIM No. 359, we presume the jury understood the instruction and applied it properly. (*People v. Delgado* (1993) 5 Cal.4th 312, 331; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1237.)

Our conclusion that the trial court's instructional error was harmless is reinforced by the fact that Roque's alleged out-of-court statement was not essential to the

---

[3] The instruction was as follows: "The defendant may not be convicted of any crime based on his out-of-court statement alone. You may only rely on the defendant's out-of-court statements to convict him if you conclude that other evidence shows that the charged crime or a lesser included offense was committed. That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. The identity of the person who committed the crime and the degree of the crime may be proved by the defendant's statement alone. You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt."

prosecution's case. (Cf. *People v. Bemis* (1949) 33 Cal.2d 395, 400-401 [omitting cautionary instruction held to be reversible error where alleged statements were "the only evidence that connected defendant with the crime"].) Equally probative was the testimony by multiple witnesses indicating Roque chased the victim down, hit him from behind, and continued using force in the absence of any apparent threat of further aggression by his opponent. Neither the self-defense nor imperfect self-defense doctrines may be invoked by "a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S*. (1994) 7 Cal.4th 768, 773, fn. 1; accord, *People v. Booker* (2011) 51 Cal.4th 141, 182-183.) The right of self-defense also ceases to exist when one's attacker no longer appears capable of inflicting harm. (CALCRIM No. 3474; *People v. Crandell* (1988) 46 Cal.3d 833, 873.)

Roque admitted to stabbing and killing Joseph Farkas. Irrespective of his alleged out-of-court statement, the testimony by prosecution witnesses regarding Roque's non-verbal conduct provided substantial evidence to support the verdict. Although the trial court erred in omitting a portion of CALCRIM No. 358 from the jury instructions, the testimony of Maxine Barfield concerning what she heard Roque say was essentially uncontroverted and the jury was thoroughly instructed on how to assess the credibility of witnesses. Therefore, we conclude it is not reasonably probable that the jury would have reached a more favorable verdict had the cautionary portion of the instruction been given.

## **DISPOSITION**

The judgment is affirmed.

_____
Gomes, Acting P.J.

WE CONCUR:


_____
Poochigian, J.


_____
Detjen, J.

11.