[Crim. No. 818.   Fourth Dist.   Aug. 10, 1950.]

THE PEOPLE, Respondent, v. DAVID HAROLD FIELDS, Appellant.

West, Vizzard, Howden & Baker for Appellant.

Fred N. Howser, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was convicted of murder in the first degree, with life imprisonment, and he appeals from the judgment.

It was stipulated that Jack Olds was killed on October 29, 1948, by a rifle shot fired by the appellant. They lived in a mountain community in Kern County, had been friends for some years, and had been drinking together late in the afternoon of that day. They arrived at appellant's home about 7 o'clock, both showing the effect of liquor but being "friendly and in good spirits." They left half an hour later, ostensibly

to take Olds home, and went to Austin's Café. The appellant became angry at Austin, who refused to serve him a drink, and a scuffle ensued during which Austin's shirt was badly torn. The appellant then made some uncomplimentary remarks about Austin, and Olds insisted that Austin was right. The appellant then struck Olds with his fist, and Olds clinched with him to keep from having trouble. They scuffled and Olds kept telling him to go home to his wife and children. Olds finally had the appellant on the ground and told him he was going to take him home. With the help of a bystander Olds got him in the car and they drove off.

They reached home about 8 o'clock and appellant's wife and sister-in-law, who will be referred to as the sister, came out and all four then entered the house. Between the front room and the kitchen was a bedroom, in which a rifle stood beside a dresser. The appellant stopped in the bedroom and leaned against or over this dresser. The other three went on into the kitchen, and Olds and the sister were talking as the wife started to prepare some coffee. Appellant's wife then saw him at the bedroom door holding the rifle at his hip. As she walked toward him two shots were fired, one of which killed Olds. The sister ran out of the house and the appellant started to follow and fired two shots toward her. He then turned around and fired two shots in the direction of his wife. She ran to a neighbor's home and phoned for help.

The only eyewitnesses were the wife and sister. The sister testified that she and the wife went out when the others returned at 8 o'clock; that "Jack had Dave down"; that "Dave told Jack to let him up, and he let him up"; that she could not remember that anything else was said; that they did not appear to be angry; that Olds assisted the appellant into the house; that he "leaned against the dresser" in the bedroom and she and the others went on into the kithen; that she and Olds were talking, and "Oh, 5 or 10 minutes" elapsed before anything occurred; that two shots were then fired and Olds fell; that nothing had been said by or to the appellant; that she ran past him and out the front door and on to a neighbor's; and that he fired two shots toward her as she ran.

The appellant's wife testified that as a result of a prior accident he suffered pain at times and took sedative pills; that he had been inclined to be irritable and moody since the accident, and would "act differently" when he took the pills and drank at the same time; that he took two of these pills about 7 that night; that when they returned about 8 the

appellant asked her to get Jack "to turn him loose"; that Jack asked him if he would behave if he let him loose; that Jack helped him up and they came in the house with their arms about each other; that as she moved a child from the bed the appellant fell over on the dresser and "sprawled" across it; that she tried to get him to bed but he wouldn't get up; that she and the others went into the kitchen; that she thought she would make some coffee; that she took the top off the coffeepot to empty it and went past the appellant toward the front door; that hearing a noise she turned around and saw him standing in the door holding the gun at his hip and "looking at the wall, right behind Jack"; that neither he nor Olds said anything; that she walked toward him intending to knock the gun aside but as she raised her hand the gun went off twice; that the sister screamed and ran out, and the appellant fired two shots in that direction; that she dropped the coffeepot and he turned and fired twice toward her; that she ran to a neighbor's and called for help; that she then heard appellant "hollering" that he had shot Jack and asking her to call a doctor; and that she ran back and found him leaning over Olds, saying he had shot him, and asking him not to die.

A number of witnesses who arrived later, some within 10 minutes, testified as to what they saw and heard. It thus appears that the appellant then spoke clearly and knew what he was doing and saying, but otherwise this evidence is not very material here. He used considerable profane language but this was habitual with him. While he was somewhat angry and abusive toward some of these witnesses, he was friendly toward others whose help he desired. He told one witness that he did not kill Olds but knew who did and would tell at the proper time. Later, he admitted that he had killed Olds and asked if the witness thought he ought to have an attorney. At one time he told a witness that he had killed Olds all right but that he hoped he could "beat this rap."

The appellant first contends that the evidence is not sufficient to show "beyond a reasonable ground of doubt" that this killing was willful, deliberate and premeditated; that the court should have, on its own motion, instructed the jury according to section 1097 of the Penal Code; and that the degree of the crime should be reduced.

Under the statutory test for first degree murder something more than an intentional killing is required, and a deliberate and preconceived intent to kill must be satisfac-

torily shown. (*People* v. *Holt,* 25 Cal.2d 59 [153 P.2d 21]; *People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8].) In the latter case, it is pointed out that "deliberate" implies something that is unhurried and arrived at as a result of careful thought and of weighing the reasons for and against a contemplated action; that it means the opposite of hasty, impetuous or impulsive; and that "premeditate" means "To think on, and to revolve in the mind, beforehand; to contrive and design previously." The words "deliberate" and "premeditated" not only negative the idea of hurried and thoughtless action but reasonably imply the existence of some plan or design in advance of taking action. "The true test is not the duration of time as much as it is the extent of the reflection." (*People* v. *Thomas,* 25 Cal.2d 880 [156 P.2d 7].) In defining first degree murder (Pen. Code, § 189) the Legislature has clearly required substantially more reflection than that involved in a mere intent to kill, and seems to have intended by the "any other kind" clause that such a killing must be one of equal cruelty or aggravation with those specifically described. While considerable discretion in fixing the degree must be left to the jury, this must be exercised in accordance with the standards fixed by law. "Mere conjecture, surmise, or suspicion is not the equivalent of reasonable inference and does not constitute proof." (*People* v. *Bender,* 27 Cal.2d 164 [163 P.2d 8].)

██   Applying these standards and rules we think the evidence here is not sufficient, beyond a reasonable doubt, to establish first degree murder. The killing was admitted and there was ample evidence that the appellant was not so intoxicated as to be incapable of forming the required intent. The main question here, as at the trial, is as to the degree of the crime. The respondent contends that the evidence sufficiently shows an intent to kill formed as a result of deliberate premeditation, with a preexisting reflection. It is argued that the appellant had time to deliberate during the ride from Austin's Cafe to his home, and that he could have been "pondering" during the time he was in the bedroom.

The evidence indicates that this killing occurred as a result of one of those sudden and unconsidered impulses upon which men in the condition of appellant not uncommonly act, and which they regret after even slight reflection, rather than as a result of any deliberation or premeditation. While it appears that the appellant displayed some anger while at the cafe, mostly against Austin, and that he later objected to being

taken .home, there is no evidence that he remained angry at Olds and none of any immediate provocation shortly before the shooting. He showed no such anger when they reached home, although he seems to have insisted upon returning to the cafe, and he accepted Olds' help into the house without taking offense. There was no previous enmity and no threats were uttered at any time. The time he spent in the bedroom was short at best, and his condition was not conducive to careful thought or reflection. His wife passed him without observing any changed position and then, before she had crossed the room, heard a noise and saw him with the gun. There is nothing to indicate that his action was planned or thought over, and the evidence rather strongly indicates that he suddenly grabbed the gun, which was kept right there, after he heard someone come into the room. In any event, he acted very quickly after his wife entered the room and any conclusion that he had been "pondering" and had decided to thus act is necessarily based on guess and conjecture. There is no substantial evidence justifying an inference, beyond a reasonable doubt, that he deliberately and with premeditation formed or carried out an intent to kill.

We have not overlooked two other points raised by the appellant, which we regard as without merit.

The judgment is modified by reducing it to murder in the second degree and, as so modified, is affirmed. The cause is remanded with directions to pronounce judgment accordingly.

Mussell, J., concurred.