[Crim. No. 5485. In Bank. Dec. 22, 1953.]

THE PEOPLE, Respondent, v. WILLIE DELONEY, Appellant.

Rodin, Nelson & Coffin and Robert R. Coffin for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant Willie Deloney was charged by information with the murder of Ollie Stillwell. He pleaded not guilty. The jury returned a verdict of murder in the first degree without recommendation. Defendant's motion for a new trial was denied, and he was sentenced to death. The appeal to this court is automatic. (Pen. Code, § 1239b.)

The killing occurred at about 8:20 p. m. on February 15, 1953, at Bob's Barbecue, a café and bar located in the Monte Vista Tract on Crow's Landing Road, Stanislaus County. Defendant had been in the bar most of the day drinking beer. Stillwell and his wife, Willie Stillwell, had spent the afternoon in Stockton with Golie Turner and Willie Crawford and had had several drinks. They returned in Turner's car, after stopping for a short time at Modesto. Turner left the Stillwells at their home, a block or two from the bar. Turner and Crawford continued on to the bar. Defendant was dancing by himself on the dance floor and playing the juke box and piano. About 8 p. m. Stillwell and his wife came to the bar. Bill Allen, known as Cowboy, asked Stillwell to buy him a drink. Stillwell's refusal led to an argument. Willie Stillwell took her husband by the collar and dragged him outside. Crawford tried to persuade Stillwell to go home. Cowboy and defendant came out, and Cowboy and Stillwell resumed their argument. Cowboy had a .22 caliber pistol in his belt, but made no attempt to use it. Cowboy and Stillwell scuffled for a few minutes and then Cowboy entered the bar.

As he passed through the doorway defendant said to him, "If I had your gun, if I was you, I would have killed him." Stillwell overheard this remark. A fist fight followed between the two, and Stillwell knocked defendant down two or three times. Calvin Belford, known as Roger, joined the fight and seized Stillwell from behind and threw him to the ground. Roger was forced to let go his grip when Willie Stillwell bit him in the back. Defendant got to his feet and returned with Cowboy to the bar. Stillwell and his wife remained out-

side. Defendant and Cowboy went to the back part of the bar. Defendant asked for the gun, and Cowboy gave it to him. Defendant started for the door, waving the gun, when one of the other patrons seized him and threw him to the floor, saying, "Willie, you're not to get in no trouble like that." Defendant tried to get up, shouting, "Turn me loose, I'll kill him." The bartender, not realizing that defendant had the gun, told the men to let him go, and they released him.

One of the men shouted, "Stillwell, Deloney got a pistol. You better start running if you're going to run. If you stay, you're going to fight him." Stillwell went to his car, took off his overcoat, folded it, placed it in his car, took a tire pump from the turtle back, and then rolled up his sleeves. He returned to the side of the building near the door and by a window where he could see inside the bar. Defendant paused at the door with the gun in his hand by his side and was pushed by a man behind him that two of the witnesses identified as Cowboy. As defendant passed through the doorway, Stillwell struck him on the side of the head with the tire pump. Defendant dropped the gun and fell to the ground near a parked car. Stillwell attempted to strike him a second time, but the tire pump hit the side of the car and was knocked from his hands. Stillwell leaped upon defendant and struck him repeatedly in the face with his hands. Stillwell made no attempt to pick up the gun.

As the two men rolled on the ground, defendant managed to regain the gun with his right hand. Stillwell seized defendant's right hand with his own left hand and continued to strike defendant in the face with his right hand. Defendant was still on the ground with Stillwell crouching over him, when defendant fired one shot into the ground and then twisted the gun around and fired two shots into Stillwell's body. Stillwell fell to the ground. Defendant got to his feet and walked to the door of the bar. He said to the spectators, "I told you guys I was going to kill him." He turned back, stood over Stillwell, who had not moved since the first shots, and said, "I told you I was going to kill you." He then fired the gun into Stillwell's body until the gun clicked several times on empty chambers. Stillwell's wife, who had been holding Roger from the fight, came running to the scene and asked defendant if he had killed Stillwell. Defendant said, "Yes I killed him. I told you I was going to kill him, so I killed him." Defendant returned to the bar and waited for the officers. Defendant and Stillwell had known each

other before the shooting, but there is no evidence of any previous animosity between them.

The foregoing evidence was presented by the People. The defense rested at the close of the People's case.

Defendant contends that the evidence is insufficient to sustain a conviction of first degree murder. On the record the killing could come within the statutory definition of first degree murder only on the ground that it was willful, deliberate, and premeditated. (Pen. Code, § 189.) Defendant urges that the killing was done in anger without deliberation and premeditation. He points to the evidence that he had been drinking, that there was no previous animosity between him and Stillwell, that he did not arm himself until after a fist fight with Stillwell, and that he did not fire the fatal shots until after he had been repeatedly struck on the head and face by his victim. He contends that there is no evidence of any motive that might indicate deliberation or premeditation, that the killing was committed in a brawl on sudden impulse when his emotions were aroused and his inhibitions removed by alcohol and the blows he had received, that considering the character of the affray, either of the principals might have been killed, and that it was a fortuitous circumstance that it was Stillwell and not the defendant.

█ The jury could certainly have drawn the foregoing conclusions from the evidence and returned a verdict of a lower degree of homicide than first degree murder. (*People v. Tubby*, 34 Cal.2d 72, 77-78 [207 P.2d 51] ; *People v. Bender*, 27 Cal.2d 164, 178-180 [163 P.2d 8] ; *People v. Holt*, 25 Cal.2d 59, 92-93 [153 P.2d 21] ; *People v. Fields*, 99 Cal.App.2d 10, 13-14 [221 P.2d 190] ; *People v. Daniel*, 65 Cal.App.2d 622, 635 [151 P.2d 275].) We cannot reduce the offense to a lesser degree of homicide, however, if the jury could also conclude from the evidence that the killing was not on sudden impulse in the heat of passion when defendant's inhibitions were removed, but was the result of deliberation and premeditation. █ There was ample time in the interval between defendant's intervention in the quarrel between Cowboy and Stillwell and the firing of the fatal shots for defendant to contemplate the killing of Stillwell and to weigh and consider the consequences. The crucial question is whether the jury could find that he did so or was bound to conclude that during that time defendant's emotions were so aroused and his acts and statements so rash and impetuous that there was no reflection or weighing of considerations either before or

after the intent to kill was formed. Defendant's intervention in the quarrel between Cowboy and Stillwell and his statement to Cowboy at that time, "If I had your gun, if I was you, I would have killed him," indicates that there was then animosity between defendant and Stillwell and that defendant was not only not adverse to killing Stillwell but thought that Cowboy should have done so. After withdrawing from his fist fight with Stillwell, defendant entered the bar to get the gun. His friends attempted to persuade him to remain in the bar and not to "get in no trouble like that." Thus, regardless of consequences and despite the warnings and efforts of his friends, defendant was determined to kill Stillwell. In the ensuing fight outside, after both defendant and Stillwell were disarmed, defendant seized the gun at the first opportunity and twice shot his victim. When his opponent was helpless on the ground, either unconscious or dead, and all danger to defendant was past, he emptied the gun into his body. He told the spectators and Stillwell's wife that he had intended to kill Stillwell and had carried out that intention. In the light of this evidence, we cannot say that the jury could not reasonably conclude that the killing was the result of deliberation and premeditation. (*People* v. *Gilliam*, 39 Cal. 2d 235, 239 [246 P.2d 31]; *People* v. *Hooper*, 35 Cal.2d 165, 168 [216 P.2d 876]; *People* v. *Isby*, 30 Cal.2d 879, 888-890 [186 P.2d 405].)

■ Defendant contends that the instruction on deliberation and premeditation was prejudicially erroneous. The court gave the following instruction: "You are instructed that a man may do a thing wilfully, deliberately and intentionally from a moment's reflection as well as after pondering over the subject for a month or years. He can premeditate, that is think before doing the act, the moment he conceives the purpose, as well as if the act were the result of long preconcert or preparation. There is nothing in the sections of the Penal Code which relate to this subject, which indicate that the Legislature meant to assign any particular period to this process of deliberation or premeditation, in order to bring the act within the first degree."

This court has repeatedly condemned similar instructions on the ground that they lead the jury to believe that neither deliberation nor premeditation, in the commonly understood meaning of those terms, need be proved by the People. (*People* v. *Carmen*, 36 Cal.2d 768, 777-778 [228 P.2d 281]; *People* v. *Cornett*, 33 Cal.2d 33, 40-42 [198 P.2d 877]; *People*

v. *Honeycutt,* 29 Cal.2d 52, 60-61 [172 P.2d 698] ; *People* v. *Valentine,* 28 Cal.2d 121, 134 [169 P.2d 1] ; *People* v. *Bender,* 27 Cal.2d 164, 182-183 [163 P.2d 8] ; *People* v. *Thomas,* 25 Cal.2d 880, 900-901 [156 P.2d 7].)

The instruction has the same vices as the one given in *People* v. *Bender, supra.* The statements that, "a man may do a thing wilfully, deliberately and intentionally from a moment's reflection as well as after pondering over the subject for a month or years," and "He can premeditate, that is, think before doing the act, the moment he conceives the purpose, as well as if the act were the result of long preconcert or preparation," are word-for-word the same as the instruction condemned in the Bender case. (27 Cal.2d at 182.) The instruction unduly emphasizes that there need be little time to form the intent to kill or little time between the formation of the intent to kill and the execution thereof, and may have misled the jury "into thinking that an act can at the same time be hasty, hurried, and deliberate, or impulsive, unstudied, and premeditated." (*People* v. *Bender, supra,* 27 Cal.2d at 185.)

Another instruction stated : "[B]efore you can bring back a verdict of murder in the first degree, you must find that the killing was accompanied and was preceded by a clear, deliberate intent to take life; an intent on the part of the defendant to kill, which must be the result of deliberation and premeditation, so that it must have been formed upon a preexisting reflection and not under a sudden heat of passion or other condition such as precludes the idea of deliberation. To be murder in the first degree you must find that at the moment WILLIE DELONEY fired the shot which was fatal to OLLIE STILLWELL that he had a clear deliberate intention to take the life of OLLIE STILLWELL, and you must further find that this deliberate and clear intention to take the life of OLLIE STILLWELL had been formed upon a pre-existing reflection and that at the time that the defendant fired the fatal shot that he was not acting under the sudden heat of passion, or as to any other condition which precludes the idea of deliberation."

Since the foregoing instruction is a correct statement of the law (*People* v. *Daugherty,* 40 Cal.2d 876, 901-902 [256 P.2d 911]), the People contend that any error in the first instruction was cured. It is obvious, however, that there is an irreconcilable conflict in the instructions, and we are not at liberty to speculate as to which of them the jury followed.

(*People* v. *Carmen, supra,* 36 Cal.2d 768, 778; *People* v. *Cornett supra,* 33 Cal.2d 33, 41; *People* v. *Honeycutt, supra,* 29 Cal.2d 52, 62; *People* v. *Dail,* 22 Cal.2d 642, 653 [140 P.2d 828].)

As we have observed above, there is ample evidence that would justify the jury's concluding that the homicide was not deliberate and premeditated and was therefore not murder of the first degree. Under the first instruction, however, the jury may have concluded that even though the killing was hasty and hurried, impulsive and unstudied, it would nevertheless be first degree murder. If the jury followed this instruction, it may have found the existence of facts showing no more than second degree murder and yet returned a verdict of first degree murder.

█ The trial court did not instruct the jury that admissions of defendant were to be viewed with caution. Section 2061(4) of the Code of Civil Procedure provides that the jury is "to be instructed by the court on all proper occasions . . . that the testimony of an accomplice ought to be viewed with distrust, and the evidence of the oral admissions of a party with caution." The court should have given such an instruction on its own motion. (*People* v. *Bemis,* 33 Cal.2d 395, 398-399 [202 P.2d 82]; *People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873]; *People* v. *Cornett,* 33 Cal.2d 33, 40 [198 P.2d 877]; *People* v. *Koenig,* 29 Cal.2d 87, 94 [173 P.2d 1].)

Defendant's alleged statement to Mrs. Stillwell after the shooting, "I told you I was going to kill him, so I killed him," and his statement to the spectators, "I told you guys I was going to kill him," were key parts of the People's proof of premeditation and deliberation. █ The burden was on the People to prove defendant guilty of first degree murder beyond a reasonable doubt. In determining whether that burden had been met, a difficult question on the facts of the present case, the jury should have been given the instruction required by section 2061(4). Defendant's admissions were vitally important evidence in this case; it was likewise vitally important that the jury be guided as to the manner in which it was to view that evidence.

█ The jury was instructed that, "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the

crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable. But such proof need not be by a preponderance of the evidence, but only to an extent sufficient to raise a reasonable doubt in the minds of the jurors as to his guilt or the mitigating circumstances. You are further instructed that where, as in this case, the defendant has produced no evidence in his own behalf, he may have the benefit, in determining the matters expressed in this instruction, of the evidence produced by the prosecution if and when it is to his advantage to do so." The first part of this instruction was in the language of section 1105 of the Penal Code.

This court has held repeatedly that a jury should not be instructed in the language of section 1105. (*People* v. *Letourneau*, 34 Cal.2d 478, 490-491 [211 P.2d 865]; *People* v. *Cornett*, 33 Cal.2d 33, 42-44 [198 P.2d 877]; *People* v. *Valentine*, 28 Cal.2d 121, 132-134 [169 P.2d 1]; *People* v. *Thomas*, 25 Cal.2d 880, 895-896 [156 P.2d 7].) The jury was not advised that such an instruction would have no application in determining the degree of murder and that it could apply only in determining whether the homicide was murder or manslaughter, or was excusable or justifiable. (*People* v. *Thomas, supra*, 25 Cal.2d 880, 897.) The words "circumstances of mitigation" may have been interpreted by the jury to include circumstances that reduce the homicide from murder in the first degree to murder in the second degree. The error was particularly serious in the present case, since one of the most difficult questions before the jury was whether the homicide was first degree murder, second degree murder, or voluntary manslaughter. As we recently pointed out, such an instruction "may have the effect of foreclosing any consideration by the jury that mitigating circumstances, although not sufficient in law to justify or excuse the homicide, may be enough to reduce the crime to second degree murder by counteracting the element of premeditation and deliberation." (*People* v. *Cornett, supra*, 33 Cal.2d 33, 43.)

Section 1105 does not place on a defendant the burden of persuasion, but merely declares a rule of procedure that imposes on him a duty of going forward with evidence of mitigating circumstances. (*People* v. *Cornett, supra*, 33 Cal.2d 33, 42; see 9 So.Cal.L.Rev. 405.) If the jury is instructed in the words of the statute alone, it may be misled into construing the "burden of proving circumstances of mitigation" as imposing upon the defendant the burden of persua-

sion and into believing that mitigating circumstances do not exist unless the defendant proves the existence of such circumstances by a preponderance of the evidence. (See *People* v. *Cornett, supra,* 33 Cal.2d at 42-43.) ██ The trial court in the present case attempted to meet this objection by adding, "but such proof need not be by a preponderance of the evidence, but only to an extent sufficient to raise a reasonable doubt in the minds of the jurors as to his guilt or the mitigating circumstances" and by explaining that defendant could take advantage of evidence produced by the prosecution. These additional statements may have avoided some of the confusion that would result from a reading of section 1105 alone (*People* v. *Leddy,* 95 Cal.App. 659, 672 [273 P. 110]; see *People* v. *Cornett, supra,* 33 Cal.2d at 44), although the jury should have been expressly told in connection with the instruction on section 1105, that the prosecution has the burden throughout the trial to prove every element of the crime beyond a reasonable doubt and that the burden of persuasion never shifts to the defendant. ██ In any event, an instruction in the language of section 1105, even with an adequate explanation of its meaning, has no proper place in a charge to the jury. As we stated in *People* v. *Thomas, supra,* 25 Cal.2d 880, "logic suggests that since such section in reality merely declares a rule of procedure and does not relieve the state of the burden of proving each and every essential element of guilt beyond a reasonable doubt the propriety of reading it to the jury, even with a proper explanation, is doubtful." (25 Cal.2d at 896; see, also, discussion in California Jury Instructions Criminal [1946], p. 283.)

██ Defendant contends that three instructions* on the right of self-defense should not have been given. He does not contend that the instructions were incorrectly worded, but invokes the rule that it is error to give instructions on prin-

---

*"The right of self-defense exists only as against an unlawful attack. The right does not exist, even though bodily injury appears probable, as against a person who, in threatening or appearing to threaten injury, is acting lawfully." (People's Instruction No. 23.)

"If an assault with the fists is being made on a person, but without intent to kill or to do great bodily harm, and if the assault is not likely to produce great bodily injury, and if the one thus attacked is not deceived as to the character of such an assault, he is not justified in using a deadly weapon in self-defense." (People's Instruction No. 25.)

"The law does not permit or justify one who intends to commit an assault upon another to design in advance his own defense by instigating a quarrel or a combat with a view thereby to create a situation wherein the infliction of the intended injury will appear to have been done in self-defense." (People's Instruction No. 26.)

ciples of law that have no application to the facts of a case. (*People* v. *Sanchez*, 30 Cal.2d 560, 572 [184 P.2d 673] ; *People* v. *Silver*, 16 Cal.2d 714, 722 [108 P.2d 4] ; *People* v. *Roe*, 189 Cal. 548, 558 [209 P. 560] ; *People* v. *Geibel*, 93 Cal.App.2d 147, 178 [208 P.2d 743].)

From a review of the record it appears that each instruction was properly given. Instruction No. 23 was justified by the evidence. In view of defendant's statement to Cowboy, in the presence of Stillwell, that had he been Cowboy he would have killed Stillwell, and his statement in the bar, "Turn me loose, I'll kill him," it could be inferred that defendant came out of the bar to kill Stillwell, that Stillwell knew it, and that he acted lawfully when he seized the tire pump and struck defendant. Instruction No. 25 was also justified by the evidence. At the time defendant fired the fatal shots, Stillwell had dropped the tire pump and had made no attempt either to retrieve it or pick up the gun. Instruction No. 26 was likewise proper; the jury could infer from the evidence that defendant was the aggressor throughout.

### CONCLUSION

 Three serious errors were committed at the trial of this case: (1) The instruction on premeditation and deliberation was erroneous; (2) The instruction in the language of section 1105 of the Penal Code failed to advise the jury that it had no application in its determination of the degree of murder; and (3) The jury was not instructed as required by section 2061(4) of the Code of Civil Procedure.

A number of cases have held that such errors required reversal (*People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281] [error (1), *supra*, combined with other errors] ; *People* v. *Bemis*, 33 Cal.2d 395 [202 P.2d 82] [error (3)] ; *People* v. *Cornett*, 33 Cal.2d 33 [198 P.2d 877] [errors (1), (2), and (3)] ; *People* v. *Valentine*, 28 Cal.2d 121 [169 P.2d 1] [errors (1) and (2)] ; *People* v. *Thomas*, 25 Cal.2d 880 [156 P.2d 7] [errors (1) and (2)]) ; in other cases, relied upon by the People, this court has concluded that the evidence of guilt was so overwhelming that reversal was not indicated. (*People* v. *Letourneau*, 34 Cal.2d 478 [211 P.2d 865] [errors (2) and (3)] ; *People* v. *Hilton*, 29 Cal.2d 217 [174 P.2d 5] [error (1)] ; *People* v. *Keonig*, 29 Cal.2d 87 [173 P.2d 1] [error (3)] ; *People* v. *Honeycutt*, 29 Cal.2d 52 [172 P.2d 698] [error (1)] ; *People* v. *Bernard*, 28 Cal.2d 207 [169 P.2d 636] [error (1)].)

Each case necessarily turns on its own facts. A careful examination of the entire record in this case leads to the conclusion that it is not improbable that a correctly instructed jury would have reached a different verdict. The evidence, although sufficient to sustain a conviction of first degree murder, would readily justify a conviction of a lesser degree of homicide. Each error in this case tended to lead the jury to a verdict of first degree murder even though it may have drawn inferences from the evidence showing no more than second degree murder or voluntary manslaughter. As in *People* v. *Cornett, supra,* 33 Cal.2d 33, where the errors were identical with those in the present case, reversal is necessary to avoid a miscarriage of justice.

The judgment and the order denying the motion for a new trial are reversed.

Gibson, C. J., Carter, J., and Schauer, J., concurred.