[Crim. No. 14515.    Second Dist., Div. Five.    Apr. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE
STEPHEN SCHERR, Defendant and Appellant.

166

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

REPPY, J.—Defendant-appellant Scherr was found guilty by a jury of two violations of section 288 and one violation of section 288a of the Penal Code. Thereafter, through appropriate proceedings. defendant was placed at Atascadero State Hospital for a 90-day diagnosis period and, after observation was found to be a mentally disordered sex offender but not amenable to treatment. Two years later he was returned to court, and, at a probation and sentence hearing, he was found still to be a mentally disordered sex offender. Proceedings were suspended, and he was placed on probation for five years on certain specified conditions. Defendant took a timely appeal from the order granting probation.

At the trial there was substantial evidence presented by the prosecution to support the finding that defendant committed an act in violation of section 288 of the Penal Code on his 11-year-old daughter and an act in violation of section 288 and another act in violation of 288a of the Penal Code on his 10-year-old son. Forthrightly, defendant does not claim that there was insufficient evidence to support the verdict with respect to each of these counts. However, he urgently does contend that the trial court erred (1) in denying him the right to examine a psychiatrist, called by the prosecution in rebuttal to the defense, on *voir dire* in the absence of the jury to test the competence of certain oral and written admissions of defendant about which it was represented the psychiatrist would testify; and (2) in admitting into evidence the testimony of the psychiatrist which related the oral admission made by defendant and identified a written admission made by him, because to do so constituted an invasion of his right to privacy. Again, forthrightly, defendant does not urge that admitting this evidence was a violation of a confidential communication between doctor and patient, recognizing that no such rule was applicable to criminal cases at the time of this trial, April 1965. Defendant further contends that the trial court erred in failing to give *sua sponte* the usual cautionary instruction with respect to oral admissions of a defendant. Finally, he takes exception to the inclusion of the term "concurrently" in the order granting probation.

Some facts and trial steps pertinent to the issues under consideration are these: Defendant was the father of the two victims. There had been a divorce secured by the mother who had received custody of the children. Defendant had rights of visitation. On Thanksgiving Day of 1964 defendant was exercising his right of visitation with some of the children, the two victims and an older daughter, who was then 13. He took them to a family Thanksgiving affair at the home of one of his relatives.

The 13-year-old daughter did not testify in the prosecution's case in chief and was involved in other evidence only to the extent of being shown to have been present at the get-together, to have gone to a bedroom door at a time when defendant and the 10-year-old son were alleged to have been in the bedroom, and to have knocked and announced that they should come to eat. Defendant testified in his own behalf, denied that he had committed the offenses and testified that at no time had he ever molested *any* of his children.

In light of this testimony of defendant, the prosecution called the 13-year-old daughter in rebuttal. She testified, in part, that her father had molested her and that previously she had told somebody that her father had placed his private parts in her private parts.

At a time when the jury was not present, the prosecution announced that for further rebuttal it was calling a psychiatrist, a Dr. Gerty, who had examined defendent about seven years earlier, and to whom defendant had made certain admissions about his relations with his now 13-year-old daughter, who was then about seven. Following this psychiatric examination, apparently by reason of the psychiatrist's advice, defendant had voluntarily admitted himself to a mental hospital. Defense counsel objected to Dr. Gerty testifying on the ground that the situation should be considered analogous to *Dorado*[1] as involving an admission obtained without advice of constitutional rights. This objection was overruled (correctly so on this ground). In the argument about admissibility, there was only indirect allusion to the concept of the right of privacy upon which defendant now strictly relies. Defense counsel then asked to be allowed to examine Dr. Gerty on *voir dire* to determine whether or not defendant's admissions, to which it was represented the doctor would testify, were voluntarily given. The suggestion was made that, since defendant very shortly thereafter was admitted to a mental hospital, he might have been in such a mental state whereby he could not have made knowingly a voluntary admission.

The trial judge refused the request on the basis that the evidence on the issue of voluntariness "would be subject to the consideration of the jury"; that he didn't "think it . . . [was] a matter of voir dire."

Dr. Gerty, before the jury, then testified on direct examination that he was a specialist in psychiatry; that he was a friend of the Scherr family and a close acquaintance of defendant's father, Dr. Scherr; that he examined defendant on 2 December 1958; that in the course of the examination defendant stated to him that he had been having sex play with his little girl, "inserting between the legs"; that he gave defendant a check list to fill out in his own handwriting which had a place for the making of notations as to problems; that the normal procedure was for the patient to fill out the check list in a test booth; that it would be safe to say that

---

[1] *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

defendant wrote on the exhibited check list the statement "sexual problems with daughter among other things." This check list was received in evidence.

In surrebuttal a Dr. Gallagher and Dr. Scherr (defendant's father) testified that the 13-year-old daughter had recently been examined and that the examination indicated the hymenal ring was intact.

CALJIC Instruction No. 29 D (evidence of an oral admission of the defendant ought to be viewed with caution) was not requested by defendant at the time of trial. It was not given by the trial judge *sua sponte*.

The minutes for 5 October 1967 which constitute the order placing the defendant on probation, read in part as follows:

"Defendant's motion for new trial is denied. In each Count CONCURRENTLY: Proceedings suspended. Probation granted for five years. [Then follow terms of probation.]"

### THE DENIAL OF THE RIGHT TO EXAMINE PSYCHIATRIST ON VOIR DIRE.

Involved is an admission to a private person not connected with law enforcement which does not relate to the crimes charged, but which constitutes contradiction of a broad exculpatory claim by defendant that he had never at any time molested any of his children. When defense counsel asserted that he wished to test the voluntariness of the admission in an advance *voir dire* procedure it is clear that he did not mean voluntary in the sense of being free from coercive measures (physical or psychological) of law enforcement, but rather in the sense of being free from irrationality, marital compulsion or mental subjugation of some kind.

Under the present Evidence Code in situations not involving confessions or admissions going directly to the crime charged, it is discretionary with the trial judge whether he will hear evidence initially outside the presence of the jury as to a preliminary fact that may bear upon the admissibility of proffered evidence (in our case the mental condition of defendant Scherr as declarant of statements to be testified about by Dr. Gerty) (Evid. Code, § 402, subd. (b)), and it appears that this was the law prior to the effectiveness of the Evidence Code (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1084, p. 1004), although "former statutes were silent on the point, and the case law was meager and confused." (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1082, p. 1002.)

Even though it were assumed, *arguendo,* that the preferred exercise of that discretion in our case would have been to hear evidence on the preliminary fact outside the presence of the jury "to avoid the prejudicial effects of jurors actually hearing evidence [which might be] ultimately excluded" (Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1084, p. 1004), the denial to do so proved to be of no consequence in light of the circumstance that the cross-examination of Dr. Gerty with respect to the mental state of the defendant, to the nature of his examination, and to his competency to give the oral and written statements to the doctor established no barrier to their admission. On cross-examination the doctor stated that he believed defendant had come to his office voluntarily; that he did not know of anyone having forced him to come; that he had not been brought by anybody; that he had not been referred by any relatives; that he had gotten to his office through general information; that he felt that the defendant had discussed things freely and voluntarily; that he did not know of defendant having been under hypnosis or drugs of any sort. It is true that Dr. Gerty testified that he had come to the tentative opinion that defendant was a sociopathic individual with some schizoid symptoms and that he felt that he should be in a hospital to be taken care of, but at no time did Dr. Gerty indicate that defendant's mental status had been such that he had had any mental impairment which had interfered with his giving a knowledgeable and voluntary statement. Moreover, when defendant testified in surrebuttal, he did not suggest that he was mentally incapable of making a voluntary admission. Therefore, even if these foundational inquiries had been made initially outside of the presence of the jury, it is clear that the trial judge would have ruled that the material was entitled to go to the jury and that the jury was entitled to pass upon the question of whether the statements had been knowingly and voluntarily made.

### Question of Invasion of Right to Privacy.

Under consideration here is the question of whether the intimate revelations made by defendant to Dr. Gerty in connection with a self-sought medical examination and the professional advice given him should be considered protected by a constitutional or legal right of privacy and whether this protection should be achieved by making such information inadmissible in a trial such as the one under consideration.

Both counsel agree that the present psychotherapist-patient privilege set up in the Evidence Code was not applicable to this trial. Under section 12 of the Evidence Code the court is required to apply the law applicable at the time to trials commencing before 1 January 1967. The rule at the time of the instant trial was that there was no doctor-patient privilege in criminal cases. (*People* v. *Ditson*, 57 Cal.2d 415, 448 [20 Cal.Rptr. 165, 369 P.2d 714] ; *People* v. *Combes*, 56 Cal.2d 135, 149 [14 Cal.Rptr. 4, 363 P.2d 4].) [2] It is not felt that any so-called right of privacy was existent at the time of this trial which should have precluded the use of the information from Dr. Gerty. If it should be considered that any right of privacy existed in the instant case, it was terminated by defendant himself when he chose to testify on direct examination to the effect that he had never, at any time, molested any of his children. (*People* v. *Sylvia*, 54 Cal.2d 115, 122 [4 Cal. Rptr. 509, 351 P.2d 781] ; *People* v. *Westek*, 31 Cal.2d 469, 478-479 [190 P.2d 9] ; cf. *People* v. *Davis*, 233 Cal.App.2d 156, 161 [43 Cal.Rptr. 357]). The prosecution had not presented the material in its case in chief, but put it forward as rebuttal to the defensive testimony given by defendant. Therefore, the trial court did not err in admitting into evidence the doctor's testimony concerning the oral statements made by defendant to him with respect to his relations with his daughter, or the written statement made by defendant himself on the check list paper.

PROBLEM OF FAILURE OF COURT TO GIVE INSTRUCTION THAT AN ORAL OUT-OF-COURT ADMISSION OF A DEFENDANT SHOULD BE VIEWED WITH CAUTION.

The instruction that evidence of an oral admission of the defendant ought to be viewed with caution is a correct statement of law; ordinarily it applies to oral admissions relating to the offense charged (*People* v. *Ford*, 60 Cal.2d 772, 779 [36 Cal.Rptr. 620, 388 P.2d 892]) ; and there are cases which hold that the instruction should be given *sua sponte*.[3]

---

[2]Before October 5, 1965, psychiatrists had only the physician-patient privilege of Code of Civil Procedure, section 1881, subdivision 4. Between October 5, 1965 and January 1, 1967 psychiatrists retained the above noted privilege and were included in the coverage of the attorney-client privilege, Business and Professions Code, section 2904 (Stats. 1955, ch. 553, now repealed). The trial of the instant case occurred in April 1965.

[3]Although section 2061, subdivision 4, Code of Civil Procedure (specifically setting out the rule) was repealed with the advent of the Evidence Code, and no similar provision was included in that code, the strong

(*People* v. *Carswell,* 51 Cal.2d 602, 608 [335 P.2d 99] ; *People* v. *Deloney,* 41 Cal.2d 832, 840 [264 P.2d 532]; *People* v. *Bemis,* 33 Cal.2d 395, 398-399 [202 P.2d 82] (giving reasons for rule and citing authorities on point).) However, the admissions involved in the testimony of Dr. Gerty were not admissions pertaining to the offenses charged with the son and the younger daughter. They served only to impeach defendant's testimony that he had never molested any of his children. There is less reason to apply the cautionary rule to this collateral feature. (*People* v. *Soto,* 232 Cal.App.2d 437, 444 [42 Cal.Rptr. 799].)

Moreover, the instruction defendant says should have been given relates to ''oral'' admissions. It does not apply to written admissions. (*People* v. *Gardner,* 195 Cal.App.2d 829, 832 [16 Cal.Rptr. 256]; see also *People* v. *Hines,* 61 Cal.2d 164, 173 [37 Cal.Rptr. 622, 390 P.2d 398].) (These latter cases hold that the rule is not applicable to tape recordings, *Gardner* pointing out that tapes are similar to writings.) Probably the most impressive part of the evidence brought in through Dr. Gerty was the handwritten statement of defendant himself, ''sexual problems with daughter.'' Some of the oral statements of defendant narrated in the testimony of Dr. Gerty were somewhat stronger, but fundamentally, they were the same. It is not felt that they were so significantly different as to overshadow the written statement. In *People* v. *Gardner, supra,* there were both oral admissions and tape recordings. The court held that there could have been no prejudice in the failure to give the cautionary instruction as to the oral admission, and it gave as one of its reasons the fact that similar incriminating statements were introduced by means of the tape recording. Even if we were to hold that the failure of the trial court to give the instruction *sua sponte* was error, we conclude that the California rule of harmless error is applicable to this case (*People* v. *Jones,* 254 Cal.App.2d 200, 223 [62 Cal.Rptr. 304]) : it is not reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Schroeder,* 264 Cal.App.2d 217, 229 [70 Cal.Rptr. 491].)[4]

decisional law is still effective. (See *People* v. *Wheelwright,* 262 Cal. App.2d 63, 69, 70 [68 Cal.Rptr. 356], (including footnote 4); *People* v. *Daw,* 267 Cal.App.2d 560, 565 [73 Cal.Rptr. 89].)

[4]Where no federal constitutional error is involved states may apply their own standard of harmless error. (*Cooper* v. *California,* 386 U.S. 58, 62 [17 L.Ed.2d 730, 87 S.Ct. 788].)

USE OF WORD "CONCURRENTLY" IN THE PROBATION ORDER.

█ The effect of the wording of the minutes which constituted the order placing defendant on probation was that as to each count the proceedings were being suspended and probation was being granted to defendant operating concurrently as to each of the three counts. This was not necessary, but apparently the trial judge felt that out of the abundance of caution it made it absolutely clear that there was only one term of probation for five years and that there were not three separate terms of probation of five years each, which ran consecutively one after the other, because of the three counts as to which defendant had been found guilty. In no way did the terminology utilized by the trial court have the effect of voiding the provision that proceedings were suspended on the theory that it was inconsistent with that step. It was not a specification that the defendant was being sentenced to a penal institution for each of the three violations with the term of each violation running concurrently. We can see no difference in the effect of the probation order whether the words "in each count concurrently" are left in or stricken. If they are left in, they are superfluous. Therefore, we elect not to disturb the present wording of the order.

The order appealed from is affirmed.

Aiso, J., concurred.

KAUS, P. J.—I concur in the result, but wish to make two points: 1. We must follow the rule of *People* v. *Westek*, 31 Cal.2d 469, 478-479 [190 P.2d 9], and impeachment by contradiction of defendant's testimony that he had never molested any of his children was therefore proper. Personally I dislike a rule which puts a premium on the prosecutor's failure to object to improper testimony. 2. Had defendant consulted a psychologist after molesting his then seven-year-old daughter, his communications would have been privileged. (See footnote 2, *ante*.) Quite arguably it was a denial of equal protection to grant a privilege to patients who consulted psychologists, but to deny it to those who took their troubles to psychiatrists. Had the matter been argued from that point of view in the trial court, and were it thus argued before us, I might conceivably reach a different result.

A petition for a rehearing was denied May 2, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1969.